IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEROME MAHER,                          )
                                       )
        Plaintiff,                     )        No. 03 C 3421
                                       )
    v.                                 )        Magistrate Judge Jeffrey Cole
                                       )
CITY OF CHICAGO,                       )
                                       )
        Defendant.                     )
                                       )

## MEMORANDUM OPINION AND ORDER

Mr. Maher has sued the City of Chicago under the Veterans' Reemployment Rights Act of

1974 ("VRRA"), 38 U.S.C. § 2021 *et seq.*, and the Uniformed Services and Reemployment Rights

Act ("USERRA"), 38 U.S.C. §§ 4301-33 – the two federal statutes that protect the reemployment

rights of veterans – and Illinois' Public Employee Armed Services Rights Act. 5 ILCS 330/1 *et seq.*

The background of the case is discussed in *Maher v. City of Chicago*, 406 F.Supp.2d 1006 (N.D.Ill.

2006). Ignoring its own demand for trial by jury, the City has moved to strike the plaintiff's jury

demand. Conceding the absence of an explicit provision for trial by jury,[1] Mr. Maher nonetheless

contends that the Seventh Amendment accords him that right. Where, as here, Congress has not

explicitly provided for trial by jury, any right to a jury trial must be found in the Seventh

Amendment. *International Financial Services Corp. v. Chromas Technologies Canada, Inc.*, 356

F.3d 731, 735 (7th Cir. 2004); *Kobs v. Arrow Service Bureau, Inc.*, 134 F.3d 893, 897 (7th Cir 1998).

The Seventh Amendment provides that "[i]n suits at common law, where the value in

---

[1] The statutes on which the claims are based do not expressly provide for a jury trial., *See Troy v. Hampton*, 756 F.2d 1000, 1003 (4th Cir.1985), *cert. denied sub nom., Blackmon v. Observer Transp. Co.*, 474 U.S. 864 (1985); *Duarte v. Agilent Technologies, Inc.*, 366 F.Supp.2d 1036, 1037 (D.Colo. 2005); *Spratt v. Guardian Automotive Products, Inc.*, 997 F.Supp. 1138, 1140 (N.D.Ind. 1998).

controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." Although the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791, the right extends beyond the common-law forms of action recognized at that time. *Curtis v. Loether*, 415 U.S. 189, 193 (1974). As the Supreme Court noted in *Curtis*, the basic principle traces its origins to Justice Story's decision in *Parsons v. Bedford*, 3 Pet. 433 (1830):

> One of the strongest objections originally taken against the constitution of the United States, was the want of an express provision securing the right of trial by jury in civil cases. As soon as the constitution was adopted, this right was secured by the seventh amendment of the constitution proposed by congress....

> This amendment declares, that 'in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.... The phrase 'common law,' found in this clause, is used in contradistinction to equity, and admiralty, and maritime jurisprudence. The constitution had declared, in the third article, 'that the judicial power shall extend to all cases in law and equity arising under this constitution, the laws of the United States, and treaties made or which shall be made under their authority,' &c. and to all cases of admiralty and maritime jurisdiction. It is well known, that in civil causes, in courts of equity and admiralty, juries do not intervene, and that courts of equity use the trial by jury only in extraordinary cases to inform the conscience of the court. When, therefore, we find that the amendment requires that the right of trial by jury shall be preserved in suits at common law, the natural conclusion is, that this distinction was present to the minds of the framers of the amendment.

> By common law, they meant what the constitution denominated in the third article 'law;' not merely suits, which the common law recognized among its old and settled proceedings, but suits in which *legal rights* were to be ascertained and determined, in contradistinction to those where *equitable rights alone* were recognized, and *equitable remedies* were administered; or where, as in the admiralty, a mixture of public law, and of maritime law and equity was often found in the same suit. ...

> In a just sense, the amendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle *legal rights*.

*Id* at 446-447. (Emphasis supplied). *See Curtis*, 415 U.S. at 193.

*Curtis* made clear that the right to trial by jury is not inapplicable to causes of action based

on statutes, but applies to actions enforcing statutory rights "if the statute creates *legal rights and remedies*, enforceable in an action for damages in the ordinary courts of law." 415 U.S. at 194. (Emphasis supplied). In *Curtis*, the Court concluded that a damage action under Title VIII for violations of the fair housing provisions of the Act sounded basically in tort. The statute merely defined a new legal duty and authorized the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach. More importantly, the relief sought – actual and punitive damages – was the "traditional form of relief offered in the courts of law." *Id.* at 195. The fact that equitable relief was also available did not abridge the right to trial by jury. *Id.* at 195 n.10. *See also Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.*, 299 F.3d 643, 649 (7th Cir. 2002)(Posner, J.).[2]

The "'abstruse historical' search for the nearest 18th-century analog," *Tull v. United States*, 481 U.S. 412, 417-418, 421 (1987); *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990), is less important than determining whether the remedy sought is equitable or legal in nature. *See Tull*, 481 U.S. at 421; *Curtis*, 415 U.S. at 196. The parties agree that the right and remedies created by VRRA are equitable in nature. (*Response to Motion to Strike*, at 2-4). It is because they are that most courts that have addressed the question have held that VRRA plaintiffs were not entitled to a jury trial.[3]

---

[2] "The historical inquiry, and the criticism of it, are not about unsettling the principle that there is no right to a jury trial when the plaintiff is seeking only equitable relief; that principle is firm; the inquiry is to determine whether a modern *legal* right has a sufficient analogy to a right enforced by common law courts in the eighteenth century to be enforceable by "a suit at common law" within the meaning of the Seventh Amendment." *Id.* at 649.

[3] *See Troy v. Hampton*, 756 F.2d 1000, 1003 (4th Cir.1985), *cert. denied sub nom., Blackmon v. Observer Transp. Co.*, 474 U.S. 864 (1985); *Duarte v. Agilent Technologies, Inc.*, 366 F.Supp.2d 1036, 1037 (D.Colo. 2005); *Spratt v. Guardian Automotive Products, Inc.*, 997 F.Supp. 1138, 1140 (N.D.Ind. 1998). *But cf. Gruca v. United States Steel Corp.*, 495 F.2d 1252, 1256-1257 (3rd Cir.1974) (back pay remedy under the VRRA is legal in nature).

Under VRRA, a plaintiff could be awarded an amount equal to lost wages or benefits. The power to compensate an employee for wages or benefits lost because of the employer's unlawful action was discretionary with the district court and was deemed to be an integral part of the equitable remedy of reinstatement. *Troy,* 756 F.2d at 1002-1003.[4] In carrying over that remedy into USERRA, 38 U.S.C. § 4323(d)(1)(B), the Congress presumably had knowledge of the interpretations given to VRRA, at least insofar as it would affect the new statute, and to adopt those interpretations when it enacted USERRA. *Cf. Lorillard v. Pons,* 434 U.S. 575, 580-81 (1978). Thus, if USERRA did no more than reenact VRRA's back pay remedy, the City's argument would have substantial force. But the Congress went much further in crafting USERRA, and because it did, the instructive value typically associated with decisions under VRRA, *Maher,* 406 F.Supp.2d at 1012 n.3, has limited utility in the instant case.[5]

Congress enacted USERRA, 38 U.S.C. §§ 4301-33, effective October 13, 1994, to protect the Nation's military by "encourag[ing] noncareer service in the uniformed services." 38 U.S.C. 4301(a)(1). The Act amended and replaced VRRA, and like VRRA, USERRA "must be broadly construed in favor of its military beneficiaries." *TVA v. Hill,* 437 U.S. 153 (1978). *Accord, McGuire v. United Parcel Serv.,* 152 F.3d 673, 676 (7th Cir. 1998). *See also King v. St. Vincent's Hospital,* 502

---

[4] Congress characterized back pay under Title VII as a form of "equitable relief." 42 U.S.C. § 2000e-5(g) (1982 ed.): "[T]he court may . . . order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court deems appropriate." *See Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 572 (1990); *Curtis,* 415 U.S. at 198 (discretionary authority to award back pay is equitable in nature under Title VII).

[5] As the City recognizes, cases interpreting VRRA are to be applied when construing USERRA, but only "to the extent [they are] consistent with USERRA...." (*Memorandum,* at 5, citing H.R. Rep.No. 103-65 at 19, 103rd Cong. (1st Ses. 1993) reprinted in U.S.C.C.A.N. at 2452).

4

U.S. 215, 221 & n.9 (1991) (VRRA must be broadly construed). [6] In enacting USERRA, Congress intended to "clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions." *Gummo v. Vill. Of Depew*, 75 F.3d 98, 105 (2nd Cir. 1996). To that end, Congress chose in USERRA to rectify the absence in VRRA of an *express* grant of authority for the issuance of injunctive relief, 38 U.S.C. § 4302 (1993), by empowering a district court to "use its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter," 38 U.S.C. § 4323(e). *See* H.R. Rep. No. 103-65, at 38 (1994), *reprinted in* 1994 U.S.C.C.A.N. 2449, 2471.

In addition, in an obvious effort to strengthen the rights of service men and women, Congress added §4323(d)(1)(C) to USERRA, so that in cases of willful violations of USERRA "[t]he court may require the employer to pay to the person an amount "equal to the amount referred to in subparagraph (B) as liquidated damages...." [7] Nothing in the legislative history, the text or the structure of USERRA supports the suggestion that the Congress' addition of the liquidated damage provision in §4323(d)(2)(A)-- a remedy that was unavailable under prior veterans' reemployment rights statutes, *see* 38 U.S.C. § 2022 (1991); *Spratt*, 997 F.Supp. at 1140; *Duarte*, 366 F.Supp.2d at

---

[6] USERRA was enacted: 1) to encourage non-career service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service; 2) to minimize the disruption to the lives of military personnel (and others) by providing for the prompt reemployment of such persons upon their completion of such service; and 3) to prohibit discrimination because of military service. 38 U.S.C. § 4301(a).

[7] There is no doubt in this case that the City is charged with having willfully violated USERRA. The fact that the prayer for relief is somewhat vague and does not specify any statutory basis is of no consequence, for pleadings need not define the desired relief or even contain factual details or legal theories. *Blagojevich v. Rumsfeld*, 2006 WL 3147365 (7th Cir. Nov. 1, 2006); *Dunne v. Washington County Hospital*, 429 F.3d 689 (7th Cir. 2005).

1037-- was intended to be a component of the restitutionary remedies carried over from VRRA. *Cf.* *Curtis*, 415 U.S. at 197 ("Whatever may be the merit of the 'equitable' characterization in Title VII cases, there is surely no basis for characterizing the award of compensatory and punitive damages here as equitable relief."); *Tull*, 481 U.S. at 424 (the Clean Water Act does not intertwine equitable relief with the imposition of civil penalties. Instead each kind of relief is separately authorized in a separate and distinct statutory provision).

In *TWA v. Thurston*, 469 U.S. 111, 119, 125-126 (1985), the Supreme Court held that Congress intended for double damage liquidated liability for willful violations of the ADEA to be punitive in nature. Like the liquidated damage provision in the ADEA, *Airline Pilots Ass'n, Internat'l v. Trans World Airlines, Inc.*, 713 F.2d 940, 956 (2nd Cir. 1983); 29 U.S.C.§§216(b), 626(b), liquidated or double damages under USERRA are measured by the pecuniary losses sustained by way of lost wages, salary increases and other benefits. Of course, not all liquidated or double damage provisions are intended to be punitive. *See Vermont Agency of Natural Resources v. U.S. ex rel Stevens,* 529 U.S. 765, 785-86 (2000);*Commissioner of Internal Revenue v. Schleier*, 515 U.S. 323, 331-332 (1995). However, in the instant case there is no principled distinction between the ADEA's double damage remedy and that in USERRA. *Compare Bedrossian v. Northwestern Memorial Hosp,* 409 F.3d 840, 844 (7th Cir. 2005)("We agree with the district court that there is 'no material difference between the Congressional policy underlying [USERRA], as expressed in the statutory language, and other employment discrimination statutes that require a showing of irreparable harm as a predicate for preliminary relief .'"). If the former is punitive, so too is the latter, and the desideratum of both is deterrence, for deterrence is the goal of punishment. *TWA*, 469 U.S. at 125; *Tull*, 481 U.S. at 422-423. *Cf. United States v. Bajakajian*, 524 U.S. 321, 329

6

(1998).[8]

Discerning congressional intent regarding the right to trial by jury in cases where the statute provides no express answer is not without difficulty. *Lorillard*, 434 U.S. at 585. Of course, recourse must be had to the statutory text. For example, in *Lorillard*, in concluding that Congress intended that there be a right to trial by jury in private actions under the ADEA, the Court stressed that in specifically providing for both "legal' and equitable relief, Congress could not have been oblivious to the long-established meaning or significance of the former term. Similarly, in light of Congress's extensive knowledge of the operation of the FLSA, its selective incorporation and amendment of the FLSA provisions for the ADA, it was appropriate to conclude that Congress was aware that courts had uniformly afforded jury trials under the FLSA. 434 U.S. at 584-85.

The same reasoning applies here. When Congress enacted USERRA it did so against the backdrop of the Supreme Court's decision in *TWA v. Thurston* that the double damage provision in the ADEA was intended to be punitive and thereby to deter willful violations of the Act. And it certainly was aware of the consistent interpretations of the Supreme Court that remedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were *legal* remedies and that there was a right to trial by jury "if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary course of law." *Curtis*, 415 U.S. at 196-197. *See also Tull*, 481 U.S. at 422.

Not surprisingly, the courts that have considered the question have concluded that the USERRA's liquidated damages provision is punitive in nature and that a plaintiff is thus entitled to

---

[8] While Congress in §4323(d)(2)(A) described awards under subparagraphs (B) and (C) as "compensation," that is scarcely enough to tip the scales in favor of the conclusion that the liquidated damage provision was not intended to be punitive.

a trial by jury. *See Nino v. Haynes Internat'l, Inc.*, 2005 WL 4889258 (S.D.Ind. 2005); *Schmauch v. Honda of America Mfg., Inc.*, 311 F.Supp.2d 631, 636 (S.D.Ohio 2003); *Duarte*, 366 F.Supp.2d at 1038 (D.Colo. 2005); *Spratt*, 997 F.Supp. at 1142. [9] In the Seventh Circuit, "actions seeking liquidated damages provided by statute are 'suits at common law' for constitutional purposes." *Calderon v. Witvoet*, 999 F.2d 1101, 1109 (7th Cir. 1993).[10]

The Supreme Court in *Curtis* stressed that where Congress provides for enforcement of statutory rights in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves "rights and remedies of the sort typically enforced in an action of law." 415 U.S. at 195. A damage action for willful violations of USERRA is analogous to any number of tort actions recognized at common law, and "[m]ore important, the relief sought here [liquidated damages] is the traditional form of relief offered in the courts of law." *Curtis*, 415 U.S. at 195-196.

To the extent that a damage remedy is viewed as a penalty–as the City insists is the case here- -there is greater rather than less justification for characterizing it as a legal remedy. Remedies intended to punish culpable individuals were historically issued by courts of law not courts of equity and were viewed as legal remedies. *Tull*, 481 U.S. at 422; *Curtis*, 415 U.S. at 194-197 (punitive damages are legal rather than equitable); *Sailor v. Hubbell, Inc.*, 4 F.3d 323, 326 (4th Cir.

---

[9] The legislative history of USERRA reveals that the Office of Legislative Affairs of the Department of Justice urged that the proposed liquidated damage provision not be enacted because it was felt that this "punitive" provision would make it more difficult for the Department of Labor to resolve VRRA disputes amicably and would consequently increase litigation. (Senate Report 103-158).

[10] The substantive holding in *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1014-17 (7th Cir.1991) – which dealt with the applicable burdens of proof for an award of attorney's fees under the Copyright Act and on which *Calderon* relied on – was overruled in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 521 n.8 (1994). The Supreme Court, however, had no occasion to address *Video Views's* liquidated damages analysis. *Spratt*, 997 F.Supp. at 1141.

1993)(liquidated damages are a legal remedy); *Spratt*, 997 F.Supp. at 1141(same). Indeed, the City appears to concede that the liquidated damage provision under USERRA is a legal remedy. (*Defendant's Memorandum*, at 6).

Thus, it would seem to follow ineluctably that municipal employees, like Mr. Maher, are entitled to a jury trial under USERRA to determine whether a violation of the Act was willful. There is, however, a potentially complicating factor, although it is not argued by the City. Section 4323(d)(1)(C) allows the court to require "the employer to pay the plaintiff an amount equal to the amount referred to in subparagraph (B) as liquidated damages, if *the court determines* that the [violation] was willful." (Emphasis supplied). When a statute speaks with clarity, judicial inquiry into the statute's meaning in all but the most extraordinary circumstance is finished. *See Carter v. United States*, 530 U.S. 255, 257, (2000); *United States ex rel. Feingold v. AdminaStar Federal, Inc.*, 324 F.3d 492, 495 (7th Cir. 2003). *See also,* Easterbrook, *Legal Interpretation and the Power of the Judiciary*, 7 Harv.J.L.& Pub. Pol'y 87 (1984). But the difficulty is in determining what is "clear" for purposes of the plain meaning doctrine. The notion that because the words of a statute appear to be plain, its meaning is also plain, is often "'merely pernicious oversimplification.'" *FBI v. Abramson*, 456 U.S. 615, 626 (1982). *See also* Posner, Legislation and Its Interpretation: A Primer, 68 Neb.L.Rev. 431, 442 (1989). And language, plain or not, depends on context. *See Holloway v. United States,* 526 U.S. 1, 7 (1999); *Smith v. Zachary*, 255 F.3d 446, 448 (7th Cir. 2001); *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000).

In *Rogers v. Loether*, 467 F.2d 1110 (7th Cir. 1972), the argument was made that in using the word "court" in the clause under Title VII that provided that the "court" may award damages, the Congress must have intended to refer to the trial judge – to the exclusion of a jury – since other

9

provisions' use of the word "court" could only refer to the judge. It would be incongruous, the argument went, for Congress to have used the word "court" to mean different things.[11] In rejecting the argument, Justice (then Judge) Stevens stressed that other language in the statute implied that a jury's participation was appropriate. The statutory reference to "damages" and to "punitive damages" would normally contemplate a jury verdict as an element of the judicial process leading up to the final award. Judge Stevens concluded by stressing that it would be highly unusual for a federal statute to authorize a court to impose even monetarily limited punishment without according the defendant a right to a jury trial. 467 F.2d at 1122-1123.[12]

The Supreme Court affirmed without any discussion of the semantic argument made below. *Curtis v. Loether*, 415 U.S. 189 (1974). For the Court, it was the nature of the relief sought – actual and punitive damages – that was critical. That sort of relief, the Court stressed, was the traditional form of relief offered in the courts of law. Whatever doubts may have heretofore existed, the Court said, should now be dispelled: the Seventh Amendment applies to actions enforcing statutory rights and requires a jury trial upon demand "if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary course of law." *Id.* at 194. That is precisely what USERRA does, and that VRRA did not.

The City seeks to avoid the gravitational pull of these principles and the numerous USERRA

---

[11] The argument was not without some merit. Indeed, it was consistent with the "presumption that a given term is used to mean the same thing throughout a statute". *Brown v. Gardner,* 513 U.S. 115, 118 (1994). *See also Inyo County, California v. Paiute-Shoshone Indians of the Bishop Community,* 538 U.S. 701, 710 (2003). "'To give the same words a different meaning for each category would be to invent a statute rather than interpret one.'" *Pasquantino v. United States,* 544 U.S. 349, 358-359 (2005).

[12] Numerous other statutes have used the word "court" in an expansive, rather than a limited way. *See Kobs v. Aeroservice Bureau, Inc.,* 134 F.3d 893, 896-897 (7th Cir. 1998).

cases involving jury trials against municipalities[13] by arguing the general principle that while liquidated damages are a legal remedy, they are not available against a municipality because they are punitive in nature, and a municipality is not subject to punitive damages. The difficulties with the argument are that "general propositions do not decide concrete cases," *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting), the plain language of USERRA allows for the imposition of liquidated damages against the City, and the argument, if accepted, would gut USERRA as it applies to reservists throughout the nation who are employed by municipalities.

"Since municipalities' common law resistance to punitive damages still obtains, '[t]he general rule today is that no punitive damages are allowed *unless expressly authorized by statute.*'" *Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003)(Emphasis supplied). Contrary to the City's contention, USERRA does exactly that. Under USERRA, a "State" is subject to "the same remedies [one of which is liquidated damages under §4323(d)(1)(C)], including prejudgment interest, as may be imposed upon any private employer under this section." 38 U.S.C. § 4323(d)(3). USERRA defines "private employer" as including "a political subdivision of a State." 38 U.S.C. § 4323(j). The general definition section of USERRA includes a State within its definition of an employer, 38 U.S.C. §4303(4)(a)(iii), and the term State is defined to include each of the several states of the United States, including its agencies and political subdivisions. *Id.* at §4303(14).

In short, the City is treated no differently than a private employer and is subject to the damage remedies in §4323(d)(1)(B) and (C). *Compare Minch v. City of Chicago*, 363 F.3d 615, 619 (7th Cir.

---

[13] *See Wallace v. City of San Diego*, 460 F.3d 1181 (9th Cir. 2006); *Chance v. Dallas County Hospital Dist.*, 176 F.3d 294 (5th Cir. 1999); *Carpenter v. Tyler Independent School Dist.*, 429 F.Supp.2d 848 (E.D.Tex. 2006); *Brinkley v. Dialysis Clinic, Inc.*, No. 04-184, 2006 WL 566799 (M.D.Ala. Mar. 1, 2006); *Fink v. City of New York*, 129 F.Supp.2d 511 (E.D.N.Y. 2001).

2004)(Chicago is "political subdivision" under the ADEA); *Harris v. City of Montgomery*, 322 F.Supp.2d 1319, 1326 (M.D.Ala. 2004)(a suit against a municipality is considered a suit against a private employer). It is difficult to imagine a clearer expression of congressional intent to disturb the common-law immunity against an award of punitive-like damages against a municipality than that in USERRA.

In *Potence v. Hazleton Area School Dist.*, 357 F.3d 366 (3rd Cir. 2004), the Third Circuit made a similar finding with regard to the ADEA's definition of employers, which included "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State." 29 U.S.C. § 630(b). Thus, the Third Circuit reasoned, the "ADEA could not be more explicit in imposing liability for age discrimination against municipalities." 357 F.3d at 373. This included liability for liquidated damages. *Id.* The Second Circuit followed this reasoning in *Cross v. New York City Transit Authority*, 417 F.3d 241, 255 (2nd Cir. 2005), agreeing that "[b]ecause state and municipal entities are expressly included within the ADEA definition of an 'employer,' *see* 29 U.S.C. § 630(b)," the ADEA explicitly imposed liability for liquidated damages against municipalities and agencies thereof. 417 F.3d at 257.

Although the City adverts to §4323(d)(3) in a terse, somewhat opaque footnote in its supporting memorandum, in a curious inversion it seems to contend that the section supports its position that in USERRA Congress did not explicitly envision that the liquidated damages remedy should apply to municipalities. The argument appears to run this way: while Congress intended to abrogate the States' Eleventh Amendment immunity, the attempted abrogation is ineffectual because USERRA was enacted pursuant to the War Powers Clause rather than the Fourteenth Amendment. Thus, Mr. Maher is not entitled to a jury trial, only to trial by the court. (*Memorandum*, at 8 n.3).

12

If this is indeed the argument, it is constitutionally flawed and internally inconsistent.

Contrary to the City's apparent suggestion that municipal immunity to punitive damage awards under the civil rights laws rests on Eleventh Amendment considerations, (*Memorandum*, at 8 n.3), the "immunity" stems from policy concerns with imposing punitive damages on tax payers. *Vermont*, 529 U.S. at 786 n. 15. Moreover, sovereign immunity has nothing to do with this case since municipalities are not within the scope of the doctrine. *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 368-369 (2001); *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 47 (1994). Finally, if the City's version of sovereign immunity were correct, the City could not be sued at all. While the City makes no such contention, that is the logic of its apparent suggestion in footnote 3 of its Memorandum.

The City's construction of USERRA effectively reads out of the Act the liquidated damage provision of §4323(d)(1)(C) as it applies to municipalities, thereby eliminating the deterrence that Congress obviously thought so critical. Affecting as it would some of the Nation's most significant employers,[14] the City's argument – if accepted – would leave a substantial number of men and women who are responsible for the safety of the nation, without a remedy that Congress thought

---

[14] Municipalities are among the Nation's larger employers. In the aggregate, they may indeed be the Nation's largest employer. According to the Department of Labor statistics for 2005, there were approximately 5,390,210 people employed by "local government," which excludes state and federal employers. *See* United States Department of Labor, Bureau of Labor Statistics, Occupational Employment Statistics, available at http://www.bls.gov/oes/current/naics4_999300.htm#b00-0000. There are a total of 9,439,900 employees in federal, state and local government according to the DOL statistics. *See* http://www.bls.gov/oes/current/naics3_999000.htm. Of course, not all governmental employees are reservists. But a number are and the number affected by the City's construction of the Act is potentially substantial. Congress obviously concluded that State and municipal employers had a large enough percentage that they should be treated for purposes of the liquidated damages provision (and the other provisions of USERRA) like any private employer.

essential when it enacted USERRA.[15] As Judge Easterbrook has said in another context, "What sense could that make of the statutory text?" *United States v. Rodriguez*, 453 F.3d 458, 461 (7th Cir. 2006). *See also Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. 2005) (Posner, J.); *Grennier v. Frank*, 453 F.3d 442 (7th Cir. 2006).

Neither *Vernon v. Port Authority of New York and New Jersey*, No. 95-4594, 2003 WL 1563219 (S.D.N.Y. Mar. 26, 2003) nor *Stuckey v. City of Naperville*, No. 97-7037, 1998 WL 173298 (N.D.Ill. Apr. 7, 1998) sustain the City's argument nor trumps the plain language of USERRA. The district court's decision in *Vernon* was overruled on the point for which the City cites it by the Second Circuit in *Cross v. New York City Transit Authority*. [16] The court of appeals cited the district court decision as an example of a district court case incorrectly holding that a local governmental body was immune from liquidated damages, and held that "state and local government employers are subject to liquidated damages under the ADEA." 417 F.3d at 254.

*Stuckey* did not deal with the ADEA's liquidated damages provision. Instead, it held that *punitive damages* were not available under ADEA's statutory plan. It was the Act's *explicit*

---

[15] Congress intended the protection of the Nation's military – which was to be achieved through protection of individual reservists' rights – "to be afforded the highest of priorities." *TVA v. Hill*, 437 U.S. 153, 174 (1978). *See Maher*, 406 F. Supp 2d at 1011. USERRA was enacted against a backdrop of perceived national crisis. According to the Reserve Forces Policy Board, which advises the Department of Defense, the Department "cannot enforce any element of the National Security Strategy without National Guard and Reserve forces.... [and] a smaller Total Force has led to an increased role for the Reserve component." The Annual Report of the Reserve Forces Policy Board (May 2001). In fact, reservists contributed 12.1 million man-days in fiscal 2000, the equivalent work of 33,000 full-time active-duty troops. *Id.* There are more than 1.3 million reservists, including more than 140,000 in the United States Air Force Reserve. Reservists participated in contingency operations in Bosnia, Kosovo, and Southwest Asia; in humanitarian operations in Africa and Central America; in counter-drug operations in South America; in joint exercises in the Pacific, and in firefighting in the United States. *Id.* And of course, their role in Afghanistan and Iraq needs no discussion.

[16] The Seventh Circuit has been especially critical of citation to overruled cases. *See United States v. Santiago*, 826 F.2d 499, 502 n. 1 (7th Cir.1987).

14

*exclusion* of *punitive damages* against a government or its political subdivisions, 42 U.S.C.§1981(b)(1), not the defendant's status as a governmental entity, *simpliciter,* that underlay Judge Marovich's decision to strike the plaintiff's prayer for punitive damages. 1998 WL 173298, *6. In sum, neither of the two cases relied on by the City remotely suggests that Mr. Maher is not entitled to trial by jury.

## CONCLUSION

For the foregoing reasons, the City's motion to strike the plaintiff's jury demand [#71] is hereby DENIED.

**ENTERED:** _____
              **UNITED STATES MAGISTRATE JUDGE**

**DATE:** 11/21/06