IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEROME MAHER, | ) |
| Plaintiff, | ) No. 03 C 3421 |
| v. | ) Magistrate Judge Jeffrey Cole |
| CITY OF CHICAGO, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### I.
### BACKGROUND

Jerome Maher has worked for the City of Chicago's Department of Aviation since 1990. In 2003, he brought suit under the Veterans' Reemployment Rights Act of 1974 ("VRRA"), 38 U.S.C. § 2021 *et seq.*, and the Uniformed Services and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301-33 – the two federal statutes that protect the reemployment rights of veterans – and Illinois' Public Employee Armed Services Rights Act. 5 ILCS 330/1 *et seq.* During the trial the week of November 27, 2006, Mr. Maher sought to portray himself as having suffered more than a decade of calculated, consistent harassment by the City because of his participation in the Naval Reserves – first, in the Gulf War and later in Bosnia – all of which created a hostile work environment and resulted in him being denied several promotions. The events at issue spanned a period beginning as far back as 1993 and continuing through 2003. After two days of deliberations, the jury reported that it could not reach a decision and, with the parties' approval, was discharged and a mistrial was declared. The City now moves for summary judgment under a theory of laches,

renewing the motion it filed prior to the trial.

The background of this case is discussed at length in the decision on the City's previous motion for summary judgment and need not be revisited here. *Maher v. City of Chicago*, 406 F.Supp.2d 1006 (N.D.Ill. 2006).

## II.
## ANALYSIS

### A.
### Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are facts that "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bowlds v. General Motors Mfg. Div. of General Motors Corp.*, 411 F.3d 808, 810 (7th Cir. 2005). A dispute over material facts is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Bowlds*, 411 F.3d at 810.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. At summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Paz v.*

*Wauconda Healthcare and Rehabilitation Centre, LLC*, 464 F.3d 659, 664 (7th Cir. 2006). "Courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion." *Scott v. Harris*, 127 S.Ct. 1769, 1774-1775 (2007).

## B.
## Laches

An equitable doctrine, laches is founded on the notion that equity aids the vigilant and not those who slumber on their rights. *Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 47 (D.C. Cir. 2005). The defense of laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and-- the second requirement is critical-- (2) prejudice to the party asserting the defense. *State of Kansas v. State of Colorado*, 514 U.S. 673, 687 (1995); *Isaacs v. Hill's Pet Nutrition, Inc.*, 485 F.3d 383, 385 (7th Cir. 2007) (Easterbrook, C.J.); *Pruitt v. City of Chicago*, 472 F.3d 925, 928 (7th Cir. 2006); *Blue Cross and Blue Shield Ass'n. v. American Express Co.*, 467 F.3d 634, 640 (7th Cir. 2006). The prejudice must be "substantial," "material" or "serious." *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733 (7th Cir. 2003); *Jeffries v. Chicago Transit Authority*, 770 F.2d 676, 679 (7th Cir.1985); *Equal Employment Opportunity Commission v. Massey-Ferguson, Inc.*, 622 F.2d 271, 278 (7th Cir. 1980).

Lack of diligence can be demonstrated by inexcusable delay. *G. D. Searle & Co. v. Cohn*, 455 U.S. 404, 411 (1982); *Pruitt v. City of Chicago, supra*. The plaintiff bears the burden of explaining the delay in bringing suit. If the delay is inexcusable, then the defendant must show prejudice. *Miller v. City of Indianapolis*, 281 F.3d 648, 653 (7th Cir. 2002); *Zelazny v. Lyng*, 853 F.2d 540, 541 (7th Cir. 1988); *Lingenfelter v. Keystone Consol. Indus.*, 691 F.2d 339, 340 (7th Cir.1982). While laches often involves questions of fact, it is nevertheless appropriate for summary

3

judgment if the facts necessary for determining whether the defendant suffered material prejudice are not genuinely disputed. *Smith*, 338 F.3d at 733, *Jeffries*, 770 F.2d at 679. Here, it has already been determined that the Mr. Maher's delay in filing suit was inexcusable. *See also Pruitt, supra*. But as happened with its previous motion, the City has failed to demonstrate that there is no genuine dispute that it has suffered material prejudice as a result of Mr. Maher's delay.

## 1.
### The City's Potential Liability For Back Pay Does Not Amount To Material Prejudice

First, the City argues that its increased potential liability for back pay occasioned by Mr. Maher's delay in filing suit constitutes sufficient prejudice. This argument is a non-starter. In its illumination of the 1994 amendments to USERRA, the House Report specifically addressed the issue of prejudice in the laches context:

> Section 4322(d)(7) would reaffirm the 1974 amendment to chapter 43 that no State statute of limitation shall apply to any action under this chapter. It is also intended that state statutes of limitations not be used even by analogy. . . . Additionally, in dealing with the prejudice element of the laches defense, it was also made clear in Senate Report No. 93-907 at 113 "that the 'bumping of employees . . . [does not] constitute prejudice to the employer. . ." To the same effect, the payment of back wages or lost benefits, by itself, does not constitute prejudice in the laches context. *See Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 808 (8th Cir. 1979); *Cornetta v. United States*, 851 F.2d 1372, 1380-82 (Fed. Cir. 1988).[1]

House Report No. 103-65(I) H.R. REP. 103-65, 1994 U.S.C.C.A.N. 2449, 2472, 1993 WL 235763, *39. The legislative history could not be clearer. The City must do more than point to its increased

---

[1] Tellingly, the House Report cited to *Cornetta v. United States*, 851 F.2d 1372 (Fed. Cir. 1988), where the Federal Circuit stated that "[i]f back pay constitutes prejudice then virtually every suit could be said to be presumptively "prejudicial" because most successful military claimants receive back pay." 851 F.2d at 1381.

4

potential liability for back pay to establish prejudice.[2]

Only two of the cases the City cites in support of its back pay argument are VRRA or USERRA cases and both of those, *Lingenfelter v. Keystone Consol. Industries, Inc.*, 691 F.2d 339 (7th Cir. 1982), and *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 382 (7th Cir. 1987), were decided long before Congress spoke so explicitly on the issue. In addition, both cases dealt with situations where the plaintiff was replaced and the defendant was potentially liable for an entire duplicative salary over a period of years, not just the different in pay between one position and another. What the difference in salaries here might be is anyone's guess. The amount might be trivial, in which case by definition, the prejudice would neither be substantial, material or serious. *See supra* at 3. *Compare United States v. Broomfield*, 417 F.3d 654, 656 (7th Cir. 2005)(Posner, J.)(the doctrine of *de minimus non curat lex* is a sensible limitation on the making of trifling and silly claims, constitutional or otherwise).

The City, whose burden it is to establish material prejudice, does not offer any evidence on this subject. Hence, it is impossible to conclude that it is entitled to summary judgment on this aspect of its claim. Moreover, even if it were possible to look to available extrinsic information to determine that which the City has chosen not to provide me, I would have to perform the extensive exercise the Federal Circuit – in the case cited in the legislative history – called "a waste of judicial

---

[2] The City also complains, in an undeveloped, single-sentence argument, that it should not have to shuffle its staff to accommodate Mr. Maher should it be forced to move him to a different position. Such a skeletal assertion does not merit consideration. *Kramer v. Banc of America Securities, LLC*, 355 F.3d 961, 964 (7th Cir. 2004)(undeveloped, single-sentence argument deemed waived); *Perry v. Sullivan*, 207 F.3d 379, 383 (7th Cir.2000) (single-sentence argument unsupported by citation to authority deemed waived). In any event, Congress was clear early on, in the legislative history for VRRA, that in the context of laches,"[i]t was always recognized by Congress that such 'bumping' was inevitable in some situations, and that the Act required it in order to provide the veteran with his statutory rights and protections." Senate Report No. 93-907, 93rd Cong., 2d Sess. at 113 (June 10, 1974).

resources." *Cornetta*, 851 F.2d at 1381. "Instead of devoting time to the merits of a claim, courts must spend substantial time determining the salary, allowances and other benefits to which a claimant would be entitled should he prevail. . . . [and] ascertain and then subtract [setoffs]. . . . Only then does it engage in the calculus of whether the resulting sum is sufficiently prejudicial, with erratic results." *Cornetta*, 851 F.2d at 1381. As such, the City's back pay argument must be rejected.

## 2.
## The City Has Failed To Demonstrate Material Prejudice As A Result Of Unavailable Witnesses

The City also cites the loss of what it characterizes as important testimony from two key witnesses – Jerome Smith and Timothy McCarthy – who it claims are unavailable as a consequence of Mr. Maher's delay. Mr. Smith was Mr. Maher's supervisor until August of 1992. He left his job with the City in July of 1996. In his affidavit, he states that he no longer lives in Illinois – although he does not say where he does live – and claims, without explanation, that he will be unable to travel to Chicago for the trial of this case in July of 2007. (*Defendant City of Chicago's Motion for Summary Judgment*, Ex. 4). Generally, unavailability for trial must be *proven*, not merely asserted. *Goodman v. Bertrand*, 467 F.3d 1022, 1024 (7th Cir. 2006); *United States v. Cochran*, 955 F.2d 1116, 1124 (7th Cir. 1992).

In the context of laches, unavailability for trial can be shown if a witness is deceased, incapacitated, or has moved beyond the court's subpoena power and refuses to return. *Pruitt v. City*

*of Chicago*, 472 F.3d 925, 928 (7th Cir. 2006).[3] Even the cases the City relies upon require more than unsupported assertions of unavailability. *See Smith v. Caterpillar, Inc.*, 338 F.3d 730, 734 (7th Cir. 2003)(witnesses difficult if not impossible to locate); *Jeffries v. Chicago Transit Authority*, 770 F.2d 676, 680 (7th Cir. 1985)(witnesses dead or whereabouts unknown).

The City had no trouble locating Mr. Smith to procure his affidavit, and according to the notary's seal, Mr. Smith had no reluctance to travel to Illinois to give his affidavit. Indeed -- as his affidavit is silent on the question -- Mr. Smith may live just across the state line in Indiana – closer to the trial than if he lived in one of many Chicago suburbs located in Illinois, and well within the court's subpoena power. There is no explanation whatsoever for why he cannot travel to Chicago for the trial in July, and no proof of his unwillingness to assist the City. Finally, even if the City had taken the trouble to *demonstrate* that Mr. Smith is unavailable to testify at the trial, it could still not show the type of significant prejudice laches requires.

I have already granted the City summary judgment on Mr. Maher's claims that he was demoted by Mr. Smith in 1991, and found that his claims of harassment prior to December of 1992 are not actionable. *Maher v. City of Chicago*, 406 F.Supp.2d 1006, 1022-23 (N.D.Ill. 2006). This carving out of aspects of the plaintiff's claim is consistent with the course suggested by *Pruitt v. City of Chicago* decided almost a year after *Maher*. *See* 472 F.3d 925, 929. As Mr. Maher points out, the only claims remaining are his claim that he was denied a promotion in 1994 and his claim that he was transferred in 1998. (*Plaintiff's Memorandum*, at 5). Those allegations do not involve Mr.

---

[3] In *Pruitt*, it was not merely that a witness was beyond the subpoena power. He had also suffered a stroke and was experiencing severe mental problems and was unable to answer most of the questions asked of him. at a deposition in another suit Other witnesses had died and huge volumes of records had been destroyed as outdated. Another witness was suffering from cancer. 472 F.3d at 928.

7

Smith.

Mr. McCarthy, the other witness the City points to as vital and unavailable, was formerly the Department of Aviation's assistant commissioner of personnel. During trial, Mr. Maher testified that he complained to Mr. McCarthy about harassment from his then-supervisor, Dwain Hawthorne. The City complains that, during the trial, Mr. McCarthy was unavailable as a witness because, as he was under indictment, he invoked his Fifth Amendment privilege. Now, with a second trial looming, the City asserts that Mr. McCarthy will be unavailable because he is in federal prison. Significantly, the City does not suggest that Mr. McCarthy's testimony would be helpful – that is that he would testimony that Maher never complained. If Mr. McCarthy's testimony were the opposite, the delay has helped, not harmed, the City. The matter cannot be left to conjecture as the City seeks to do.

Merely because Mr. McCarthy is in prison does not mean he is "unavailable." Incarcerated people testify by way of deposition frequently. The City does not say where Mr. McCarthy is currently residing and so it is impossible to know whether he is outside the court's subpoena power. The showing made by the City is inadequate to demonstrate prejudice. *See United States v. Dyer*, 136 F.3d 417, 428 (5th Cir. 1998)(proponent of laches demonstrated incarcerated witness was hostile and unwilling to testify). The City has made no attempt to depose Mr. McCarthy, and no claim is made of impaired memory.

Also, laches requires that the defendant suffer material prejudice *as a result* of the plaintiff's delay in filing suit. *Blue Cross*, 467 F3d at 640; *Smith*, 338 F.3d at 733. The City's motion suggests that Mr. McCarthy was available as a witness for the first three years this case was pending. (*Defendant's Memorandum*, at 9). Thereafter, the indictment and conviction were intervening events

that were the cause of his assertion of the Fifth Amendment, which is not a basis for the laches defense. *See Balistrieri v. Holtzman*, 55 F.R.D. 470, 472 (E.D.Wis.1972)(witness's invocation of Fifth Amendment not ground for application of laches). One may take judicial notice that federal criminal investigations take some time and that the particular investigation involving Mr. McCarthy and others had been going on for some period before the actual indictment. How long, it is impossible to say with certainty. But it is clear that the intervening problem necessitating the claim of Mr. McCarthy's Fifth Amendment privilege was not of recent origin. The City's speculative and assumptive argument about Mr. McCarthy does not satisfy the rigorous standards imposed by Rule 56.

### 3.
### The City Fails To Demonstrate Material Prejudice As A Result Of Witnesses' Failing Memories

Finally, the City argues that four other witnesses – Dwain Hawthorne, Michael Cummings, Mary Rose Loney, and Jay Franke – while available to testify, are unable to recall certain facts and events that Mr. Maher was able to testify to at the trial. But merely showing some dimming of memories, even in conjunction with an extraordinary delay on the part of the plaintiff in initiating suit, is not enough to trigger the doctrine. *See, e.g., Leonard v. United Airlines*, 972 F.2d 155, 1159 (7th Cir. 1992)(denying claim of laches even though "memories have dimmed"). The passage of time dulls all memories to some degree and makes proof of any fact more difficult. *Dickey v. Florida*, 398 U.S. 30, 42 (1970)(Brennan, J., concurring). That is why, in part, there are statutes of limitations. *Hirschberg v. CFTC*, 414 F.3d 679, 685 (7th Cir. 2005). Even the Confrontation Clause does not guarantee that witnesses won't forget things. *United States v. Ghilarducci*, 480 F.3d 542, 549 (7th Cir. 2007).

The City argues that Mr. Hawthorne, one of Mr. Maher's former supervisors, could not recall at trial how long it was before Mr. Maher was reinstated to his duties after his return from deployment in Bosnia, and whether one of Mr. Maher's former subordinates, Jeff Crosby, had been promoted while he was Mr. Maher's supervisor. (*Defendant's Memorandum*, at 10). Actually, Mr. Hawthorne testified that he did not recall it taking two-and-a-half months for Mr. Maher to be reinstated to his duties. (*Defendant's Exhibit 1*, Hawthorne Testimony, at 36-37). He was not asked how long it took. And while it is true that Mr. Hawthorne testified that he could not recall whether Mr. Crosby was promoted under his watch (*id.*, at 44), this may have been because he was not aware of whether Mr. Crosby's new job duties represented an advancement from his former position. (*Id.*, at 71).[4] As such, the testimony does not require the interpretation that loss of memory over time has resulted in material prejudice to the City. And, in any case, the City fails to demonstrate that there are no personnel records that would detail such events with clarity. *See Hutchinson v. Spanierman*, 190 F.3d 815, 826 (7th Cir. 1999)("Successful invocation of the doctrine of laches has included proof that available witnesses did not have a distinct recollection of the details of the case or that they had no access to records which would disclose the same."); *see also Pruitt*, 472 F.3d at 928 (ample proof that records destroyed in the ordinary course of business long before litigation commenced); *Smith*, 338 F.3d at 733 (motion supported with evidence regarding the destruction of relevant personnel records).

Beyond that, the trial transcript does not depict Mr. Hawthorne struggling with his memory. He was able to remember how he met Mr. Maher in 1991, about two years before he became Mr.

---

[4] Mr. Maher's contention at trial was that few, if any people, were as qualified as he and that any promotion other than his was suspect. The fact that Mr. Hawthorne could not remember whether a particular person was promoted does not begin to satisfy the stringent requirement that the prejudice be significant.

10

Maher's supervisor. He recalled that Mr. Maher visited the comptroller's office in those days, which was where he, Mr. Hawthorne, worked at the time. He was able to remember Mr. Maher's job duties and responsibilities, as well as the fact that he had CPA training, and that it did not come into play in his position. Mr. Hawthorne recollected that he learned that Mr. Maher was in the Naval Reserves in 1991. He knew for certain that he never performed a written evaluation of Mr. Maher's work, and that he never disciplined him. He also recalled that Mr. Maher had two people that reported directly to him. (*Defendant's Exhibit 1*, Hawthorne Testimony, at 29-31). Mr. Hawthorne testified specifically that Mr. Maher did not show him the orders indicating the Navy had activated him, did not inform him of the activation, and that he had to learn of it through the personnel department. (*Id.*, at 33). He specifically denied that he resented Mr. Maher for his service in the reserves or ever commented negatively in regard to it. (*Id.*, at 34). Overall, his testimony did not evince the fading memory of which the City complains. In short, Mr. Hawthorne's testimony allows the reasonable inference that the passage of time has not robbed him of his recollection of salient events to a degree that materially prejudices the City.

That leaves Mr. Cummings, Ms. Loney, and Mr. Franke. The City argues that these witnesses could not recall Mr. Maher's titles or job duties at the time Mr. Maher alleged he was demoted or mistreated. (*Defendant's Memorandum*, at 10). But, again, there is nothing to suggest that personnel records could not fill in such dates and job descriptions. *Hutchinson*, 190 F.3d at 826; *Smith*, 338 F.3d at 733. The City has presented no evidence that records have been destroyed and that but for the delay, those records would be in existence. Moreover, most of the dispute about titles involved Mr. Maher's original hiring and the City has already won on a laches defense as to those early activities. And even if that were not the case, the evidence the City presents does not

11

demonstrate that there is no dispute that Mr. Maher's delay caused the three witnesses to forget what happened.

A look behind the City's bald assertions regarding the memories of Mr. Cummings, Ms. Loney, and Mr. Franke undermines the City's arguments about the passing of time and the fading of memories. The City states that Mr. Cummings testified that he could not recall the dates or number of times that Mr. Maher complained about discrimination. (*Statement of Uncontested Material Facts*, ¶ 43(b), citing Ex. 1, at 76). The portion of the transcript to which the City points, however, does not support this assertion. In it, Mr. Cummings testifies that he worked for the City for 28 years, was replaced by Timothy McCarthy, became deputy commissioner of facilities, and had formerly been a deputy commissioner at Midway Airport. (*Defendant's Exhibit 1*, Cummings Testimony, at 76). Local Rule 56.1(a)(3) requires that the party's statement in support of a motion for summary judgment refer to the "affidavits, parts of the record, and other supporting materials" that substantiate the listed facts. *F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). A court should not be expected to review a lengthy record for facts that a party could have easily identified with greater particularity. *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 818 (7th Cir. 2004). The City's argument regarding Mr. Cummings' loss of memory, then, are disregarded. *Bay Area Business Council*, 423 F.3d at 633 (district court is entitled to expect strict compliance with Rule 56.1); *Ammons*, 368 F.3d at 817 (same).

The City asserts that Ms. Loney did not recall certain aspects of Mr. Maher's tenure with the Department of Aviation: whether he attended staff meetings, whether she ever promoted anyone to a deputy position, whether anyone recommended Mr. Maher for promotion, whether she promoted Mr. Crosby. (*Statement of Uncontested Material Facts*, ¶ 43(c), citing Ex. 1, at 158, 166, 168, 180,

12

188). But review of the cited portions of the transcript does not reveal that Ms. Loney specifically claimed an inability to remember these things. When asked, "Do you recall if Mr. Maher attended any of those extended staff meetings?," Ms. Loney simply replied, "No." (Loney Testimony at 166). Such testimony could be interpreted to mean that Mr. Maher did not attend meetings. While she said that she did not recall promoting anyone during her tenure, she was able to testify in detail as to the procedure for promotion. (*Id.*, at 166-168). But more importantly – and again – promotions would be the subject of personnel records. *Hutchinson*, 190 F.3d at 826; *Smith*, 338 F.3d at 733.

As with Mr. Hawthorne, Ms. Loney's testimony was not that of one battling the passage of time in an effort to recall events. Despite the passage of well over a decade, the trial transcript indicates that Ms. Loney's memory was detailed. She testified as to certain personnel details of the department of aviation, including names and positions. (*Id.*, at 155-57). She gave a detailed account of measures taken in the department during the first Gulf War, deadlines for airport compliance, dates, security levels, the name of the General who was in charge of civil aviation security. (*Id.*, at 163-65). She had no difficulty recalling Mr. Maher and his assignment to Land Side Operations, which she testified occurred in the late spring or early summer of 1997:

> What I do recall about Mr. Maher is that we had a need in land side operations, and, again, that would be our parking, our roadways, all of the commercial vehicles that operated O'Hare, such as the taxis, the limousines, the shuttle operations, we had a need to better oversee revenue collection in that area. Parking is clearly one of the largest revenue sources for the airport. The commercial operators, the limousines, the taxicabs, the shuttles, they all pay a fee as well. And we wanted to, in addition to having oversight by operations personnel that would be responsible for controlling traffic in and out of the airport, where commercial limousines stage their vehicles before they would enter the terminal roadway to pick up and drop off passengers. We wanted to have a financial oversight component to our land side operations, and I recall having a discussion with Mr. Maher about him assuming that activity for us. It was important to us because land side revenue collections helped to ensure that the airports are financially self-supporting, in addition to the other revenues that are

collected from the airlines and from the tenants like the food and retail operations.

\* \* \*

> As I recall, he was favorable about accepting the position. I did not recall any objection to it.

(*Id.*, at 168-69). Ms. Loney testified that Mr. Maher was qualified for the position because he was with the finance division, and could provide "prudent fiscal oversight of the revenue collections." (*Id.*, at 170). She even recalled Mr. Maher's sister:

> I recall [Mr. Maher's] sister coming into my office. We did not have an appointment, but she came to my office to discuss the procedure for him to be paid when he was on – away from O'Hare on military duty.

(*Id.*, at 158). Ms. Loney's detailed testimony does not support the City's allegations that her memory has dimmed as a result of Mr. Maher's delay in filing suit. Her testimony, if believed, flatly contradicted Mr. Maher's contention that he was involuntarily transferred to Land Side Operations as a punishment for his military service.

The City's assertions regarding Mr. Franke's inability to recall events are equally feckless. The City's concerns in this regard are over Mr. Franke's recollection of Mr. Maher's title, starting date, job description, and whether he was in a supervisory position. (*Statement of Uncontested Material Facts*, ¶ 43(d)). These events have already been ruled on and claims from this early period have been held subject to the defense of laches. The City's attempt to resurrect what it has already won and insist that there must be an outright dismissal of the entire case is contrary to *Pruitt* – a case which the City's briefs ignore.

Moreover, the trial transcript makes clear that Mr. Franke's inability to testify clearly as to

14

such matters was as much or more a product of what he called the "murky" nature of the hierarchy in city government:

> There were budget slots created in the annual budget by the City Council. It could say assistant commissioner for land side. It could say a lot of things. And then you put people in a job and decided what you wanted him to do. It wasn't necessarily consistent with the position title.

(Franke Testimony, at 574). He specifically explained his inability to recall Mr. Maher's title or whom he supervised as a product of the department being "one big . . . large and uneven gray landscape." (*Id.*, at 578). Even at the time, Mr. Franke "certainly didn't try to figure out who was reporting to who . . . ." (*Id.*, at 579). The passage of time, then, was not really a factor in Mr.Franke's inability to testify with any more exactitude as to the department of aviation's pecking order. The City has failed to demonstrate that it has been materially prejudiced because witnesses can no longer recall events due to the passage of time.

## CONCLUSION

For the foregoing reasons, the City's motion for summary judgment [#99] is hereby DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 6-13-07

15